IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMANDA P., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:22-CV-1018-X-BK |
| § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff seeks judicial review of the final decision of Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her claims for a period of disability and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, before the Court are Plaintiff's *Motion for Summary Judgment*, the Commissioner's responsive brief, and Plaintiff's reply.[1] Doc. 21; Doc. 22; Doc. 23. For the reasons detailed here, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings consistent with the findings and conclusions herein.

---

[1] Under Local Rule 9.1(b) (since amended) and the Court's Scheduling Order, Doc. 12, the parties were directed to file cross motions for summary judgment, the Court notes the intervening changes in the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), which took effect on December 1, 2022, specifically disallows that procedure in these actions. However, because both sides have briefed the salient issues as required under the new rules, regardless of the titles of their pleadings, the procedural change had no impact on the Court's ability to determine this administrative appeal.

## I. BACKGROUND

### A. *Procedural History*

Plaintiff's application for DIB was filed June 12, 2018. Doc. 11-1 at 94; Doc. 11-1 at 267-68. At that point, Plaintiff was a 24-year-old high school graduate with relevant work experience as a warehouse worker and rebar detailer. Doc. 11-1 at 31; Doc. 11-1 at 292. Plaintiff claimed that, beginning on June 10, 2017, she became disabled due to chronic migraines, idiopathic intracranial hypertension, and papilledema.[2] Plaintiff's application was denied at all administrative levels, and she now appeals to this Court under 42 U.S.C. § 405(g). Doc. 1.

### B. *Plaintiff's Relevant Medical History*

For several years, Plaintiff sought ongoing treatment for migraine headaches from multiple doctors, including a neuro-ophthalmologist, an optometrist, a neurologist, a psychologist, and two primary care physicians. Doc. 11-1 at 24-26. Plaintiff described "constant and daily" headaches since 2016, some of which reached as high as 10 out of 10 on an intensity scale, with some lasting upwards of five hours. Doc. 11-1 at 586; Doc. 11-1 at 887; Doc. 11-2 at 857-60. She reported symptoms such as nausea, dizziness, brain fog, blurred vision, double vision, lightheadedness, sleep difficulties, balance issues, photophobia, phonophobia, osmophobia and aggravating factors such as bright light, weather changes, noise, and focusing

---

[2] Papilledema is defined as "swelling and protrusion of the blind spot of the eye caused by edema." Merriam-Webster.com Medical Dictionary, Merriam-Webster, https://www.merriam-webster.com/medical/papilledema (last visited September 13, 2023).

on television or computer monitors.[3] *See, e.g.*, Doc. 11-1 at 256; Doc. 11-1 at 586; Doc. 11-1 at 666; Doc. 11-1 at 700; Doc. 11-1 at 801; Doc. 11-1 at 887; Doc. 11-2 at 884-86.  Plaintiff reported that, as a result, she could not perform all the functions of her job and endured flare-ups that lasted all day, four to five days per month.  Doc. 11-1 at 575, 579-80.

In March 2017, Dr. Timothy S. Clark, Ph.D., conducted Psychometric testing of Plaintiff that resulted in a MIDA score of 15 and a Headache Impact Test ("HIT") score of 66, marking that her headaches caused "irritability, difficulty concentrating and fatigue, but only mildly interfered with her ability to carry out her primary activities of daily living."  Doc. 21 at 9.  Plaintiff subsequently, participated in a health and behavioral intervention group.  Doc. 21 at 9; Doc. 11-1 at 637-42.

Plaintiff's prescribed treatment by a number of medical providers over time also included: (1) intravenous dihydroergotamine ("DHE"), Doc. 11-1 at 603-27, Doc. 11-2 at 166, 178; (2) Botox injections, Doc. 11-1 at 653, 668, 702, 726-27; Doc. 11-2 at 78-80; (3) surgery for a deviated nasal septum, Doc. 11-1 at 782, 877; (4) intravenous headache infusion therapy, Doc. 11-2 at 210, 264-65, 267-68; and (5) weekly sphenopalatine ganglion blocks, Doc. 21 at 16; Doc. 11-2 at 457-- all without any lasting relief and some with significant complications.

In June 2017, Unum, the long-term disability insurer of Plaintiff's then-employer, approved Plaintiff for long-term disability benefits finding that she was "unable to perform the

---

[3] Photophobia is an "intolerance to light."  Merriam-Webster Dictionary, available online at https://www.merriam-webster.com/dictionary/photophobia (last visited Aug. 18, 2023).  Phonophobia is "an intolerance of or hypersensitivity to sound."  Merriam-Webster Dictionary, available online at https://www.merriamwebster.com/dictionary/phonophobia (last visited Aug. 18, 2023).  Osmophobia is an "intolerance of or hypersensitivity to smells."  Merriam-Webster Dictionary, available online at https://www.merriam-webster.com/dictionary/osmophobia (last visited Aug. 18, 2023).

3

material and substantial duties of her occupation due to her medical condition of migraine headaches and vision issues." Doc. 11-1 at 761-62; Doc. 21 at 18. In 2018, as part of an Unum disability assessment, Dr. John McHenry, a neuro-ophthalmologist and treating source, stated Plaintiff was prohibited from driving a vehicle, operating machinery, lifting, or using computers. Doc. 11-2 at 214.

In 2021, Dr. Travis Brown, MD, another treating source, in answers to a disability questionnaire stated that Plaintiff was incapable of "low stress" work, and would require daily, unpredictable breaks from work to rest for two to five hours before returning. Doc. 11-2 at 858-60. He opined that she would be off task for at least 25% of the workday, and absent from work more than four days per month on average. Doc. 11-2 at 858-60.

*C. The ALJ's Decision*

Following the hearing, the ALJ found that Plaintiff met the Act's insured status requirements and had not engaged in substantial gainful activity since her alleged onset date. Doc. 11-1 at 20. He further found that her migraine headaches constituted a severe impairment. Doc. 11-1 at 21. The ALJ also determined that Plaintiff's migraine headaches neither met nor medically equaled the severity of an impairment listed in Appendix 1. Doc. 11-1 at 22. The ALJ decided that Plaintiff's residual functional capacity ("RFC") allowed her to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b), Doc. 11-1 at 22, but that Plaintiff could perform her past relevant work as a detailer and also successfully adjust to other work that exists in the national economy, Doc. 11-1 at 31-32. Consequently, the ALJ concluded that Plaintiff was not disabled under the Act.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). A sequential five-step inquiry is utilized to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or not disabled. *Id.* Otherwise, the burden shifts to the agency at step five to show there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of the denial of benefits is limited to determining whether the Commissioner's position is supported by substantial evidence and if the Commissioner applied the correct legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§

5

405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' arguments, the Court has relied upon their citations to the supporting evidence of record. The Court is not under an obligation to probe the record to find supporting evidence for one side or the other.

**III. ANALYSIS**

Plaintiff raises two issues on appeal. She contends that she was prejudiced by the ALJ's errors at (1) step three, in not identifying which of Appendix I Listings he contends her migraine headaches failed to meet; and (2) at step four, by the ALJ's erroneous determination of Plaintiff's RFC. Because, as explained *infra*, remand is required on the first issue, the Court does not reach the second.[4] *See Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007).

Plaintiff avers that the ALJ's step three decision is "beyond meaningful judicial review" because the ALJ (1) failed to identify which Listing Plaintiff's migraine headaches did not meet, and (2) "offered conclusory generalized statements" that failed to explain how Plaintiff's "medically determinable severe impairment of migraine headaches did not meet or equal the criteria of an Appendix I Listing." Doc. 21 at 22-24. Although the Commissioner concedes in

---

[4] While Plaintiff's remaining issue need not be addressed in this Court, it may be raised on remand. *See* 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

6

response that the ALJ "did not specify which Listing she considered in her analysis," Doc. 22 at 5, the Commissioner nevertheless argues that any error was harmless because Plaintiff's headaches were "fully evaluated and considered in the context of Social Security Ruling 19-4p," and it was determined that her impairment "does not medically equal the listed impairments." Doc. 22 at 4-5.

### A.  The ALJ Erred in Failing to Identify the Appendix I Listing Considered

While migraine headache disorder is not a *per se* Listing in Appendix I of the Act, Social Security Ruling 19-4p ("SSR 19-4p") recognizes Listing 11.02 (epilepsy) as "the most closely analogous listed impairment" to migraine headaches.  SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).  "While uncommon, a person with [migraine headaches] may exhibit [medically] equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)."  *Id.*

For dyscognitive seizures to satisfy Listing 11.02B, they must occur "at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02B.  However, SSR 19-4p requires additional considerations in assessing migraine headaches under Listing 11.02B:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source][5] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of the headache events; adherence to prescribed treatment; side effects of treatment (for example ... drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie

---

[5] Acceptable medical sources include licensed physicians, psychologists, optometrists, podiatrists, audiologists, advanced proactive registered nurses, and physician assistants; or qualified speech-language pathologists.  20 C.F.R. § 404.1502(a)(1)-(8).

7

> down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

Listing 11.02D requires dyscognitive seizures to occur "at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02D (cleaned up). Likewise, SSR 19-4p necessitates additional considerations for the ALJ's appraisement of migraine headaches under Listing 11.02D:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

An ALJ's failure to refer to a Listing or apply the relevant criteria amounts to legal error as "bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Robnett v. Saul*, No. 7:19-cv-00093-BP, 2020 WL 4464339, at *3 (N.D. Tex. Aug. 4, 2020) (Ray, J.) (citations omitted); *Audler*, 501 F.3d at 448 (same).

In the case *sub judice*, the ALJ neither specified the Listing on which she based her analysis of Plaintiff's migraine headaches nor sufficiently explained why Plaintiff's migraines were not medically equal to any Listing's requirements, stating in conclusory fashion only that:

8

> [t]he undersigned has considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations and finds that claimant's impairments do not singularly or in combination meet or medically equal the required criteria for any of the listed impairments. The signs, symptoms and history of treatment presented in the evidence of record are inconsistent with the degree of functional limitation that is required to meet or equal the criteria set forth in any other Medical Listing. Additionally, although the impairment of headaches cannot meet a Medical Listing, it has been fully evaluated and considered in the context of Social Security Ruling 19-4p. The impairment itself has been considered but does not medically equal the listed impairments when considered singularly or in combination with the claimant's other impairments.

Doc. 11-1 at 22.

Moreover, the Commissioner's assertion that Plaintiff's condition was considered under Listing 11.02D is unsupported. The Commissioner admits that the ALJ did not address the physical function limitations caused by Plaintiff's headaches, and the ALJ's findings as to Listing 11.02D's requirements were made in regard to the limitations caused by Plaintiff's depression and anxiety—not her migraine headaches. *See* Doc. 11-1 at 21-22 (describing the limitations of Plaintiff's anxiety and depression).

Thus, the Court finds that by providing no Listing or analysis at step three, the ALJ committed legal error.

### B. The ALJ's Error Was Not Harmless

Despite the foregoing, "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Audler*, 501 F.3d at 448 ("an exhaustive point-by-point discussion" is not always required). As such, an ALJ's failure to address a claimant's step three argument does not automatically necessitate remand. *Hurst v. Colvin*, 639 F. App'x 1018, 1021 (5th Cir. 2016). Only if "the ALJ's error casts

into doubt the existence of substantial evidence to support the ALJ's decision," is remand required. *Hurst*, 639 F. App'x at 1021 (cleaned up).

Plaintiff posits that the ALJ's erroneous decision was harmful as she presented sufficient evidence to satisfy her burden of showing that her primary headache disorder medically equals Listing 11.02's criteria, as explained in SSR 19-4p. Doc. 21 at 25, 30. In support of this argument, Plaintiff's motion contains nearly five single-spaced pages of the medical history which was in the record and available to the ALJ prior to her decision. Doc. 21 at 25-29.

The Commissioner conversely argues that Plaintiff failed to meet Listing 11.02D's criteria and likewise relies on excerpts of her medical reports spanning from 2017 to 2020 in support. Doc. 22 at 6-8. Specifically, the Commissioner argues that (1) while the ALJ did not address Plaintiff's physical function limitations caused by her headaches, Plaintiff did not have a "marked" limitation in this area; (2) Plaintiff experienced only mild limitations in (a) understanding, remembering, or applying information, (b) interacting with others, or (c) concentrating, persisting, or maintaining pace; and (3) experienced no limitation in adapting or managing herself. Doc. 22 at 6-7.

The Court declines the Commissioner's implicit invitation to evaluate the medical evidence. *See Greenspan*, 38 F.3d at 236. Here, because of the ALJ's error, "meaningful judicial review of the Commissioner's final decision [is] impossible." *Robnett v. Saul*, No. 7:19-cv-00093-BP, 2020 WL 4464339, at *3 (N.D. Tex. Aug. 4, 2020) (Ray, J.) (citations omitted); *Audler*, 501 F.3d at 448 (same). It suffices that Plaintiff points to substantial evidence in the record that, if reviewed under the appropriate standards, could have been deemed to establish that her severe impairment of migraine headaches met

10

Listing 11.02B and/or Listing 11.02D, as modified by SSR 19-4p, while, again, the ALJ's decision cites none.

Listing 11.02B's heightened standard requires a claimant introduce an AMS's detailed description of a typical headache event. SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). Although merely summarized here, Plaintiff's voluminous medical reports on the record offer detailed accounts from at least ten medical professionals including neurologists, a psychologist, and a neurological ophthalmologist. Further the copious reports describe the associated phenomena of Plaintiff's migraine headaches as, *inter alia*, lasting 4-5 hours and reaching 10/10 intensity; the frequency of the headaches as occurring 4-5 times monthly or daily; Plaintiff's adherence to treatment; the side effects of Plaintiff's treatment such as chest tightness and increased heartrate; and the limitations of her functioning caused by her migraines including the need for dark and quiet rooms, having to lie down, sleep disturbances, inability to use televisions and computers, and missed work.

Listing 11.02D's heightened standard requires consideration of the 11.02B factors as well as "whether the overall effects of the [migraine headaches] on functioning results in marked limitation in: [p]hysical functions; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). As stated above, the medical evidence seemingly satisfies the Listing 11.02B requirements. However, Plaintiff also produced sufficient evidence that could be deemed to demonstrate that her migraines caused a marked limitation on, at least, her physical functions, including causing: photophobia; phonophobia; osmophobia; nausea; insomnia;

11

visual disturbance; brain fog/disturbed concentration; dizziness/loss of balance; and an inability to perform "low stress" work, lift, focus on television or computer monitors, or operate a vehicle or machinery.

On remand, the ALJ may very well reach the same conclusion regarding Plaintiff's application. Nonetheless, this Court cannot conclude in light of the evidence of record that the conclusion would not be different. Thus, the Court finds that Plaintiff's substantial rights were affected by the ALJ's failure to adequately consider her migraine headache symptoms at step three.

## IV. CONCLUSION

For the above reasons, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings consistent with the findings and conclusions herein.

**SO RECOMMENDED** on September 13, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).